IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

KEVIN ROSS BEAM,                                   No. CIV S-11-0605-KJM-CMK-P

      Petitioner,

  vs.                                             FINDINGS AND RECOMMENDATIONS

V.W. KNIPP,

      Respondent.

_____/

      Petitioner, a state prisoner proceeding pro se, seeks to bring a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Pending before the court are petitioner's petition for a writ of habeas corpus (Doc. 5), respondent's answer (Doc. 21), and petitioner's reply (Doc. 25). Also before the court are petitioner's motion for a stay-and-abeyance order (Doc. 7) and motion for leave to amend (Doc. 26).

/ / /

/ / /

/ / /

/ / /

/ / /

# I. BACKGROUND

A. **Facts**[1]

The state court recited the following facts[2], and petitioner has not offered any clear and convincing evidence to rebut the presumption that these facts are correct:

> The victim was referred to as Jane Doe at trial. Doe worked at a gas station in Cool. She heard the police were at her mother's house and twice left work to see what was going on. Doe's mother said the police were looking for defendant. At the house there were two police officers present and then a SWAT team arrived.
> Back at the gas station, a coworker told Doe that defendant was looking for her. Defendant phoned Doe, telling her he needed to get out of town because the police were looking for him. Doe did not agree at first to help defendant; he phoned her again.
> Doe spoke with her supervisor, F. Pearce, about defendant's phone calls. Pearce suggested Doe call the police. Pearce called the police; Doe and Pearce met the police at a market near the gas station. Doe told the officers of the residence where defendant could be located. . . . .

At footnote 3, the state court observed:

> The police claimed Doe would not tell them were defendant was. Defendant was wanted for burglary or possession of stolen property.

The state court continued its discussion as follows:

> . . . They told her they could not arrest someone at another's residence without a warrant.
> Doe and Pearce came up with a plan to get defendant arrested; Doe would pick him up and leave him at a motel. Pearce would follow Doe to ensure her safety. Pearce gave Doe $60 for the motel room. The police told Doe this plan was a terrible idea and not to do it. It would not be safe.
> Despite this warning, Doe put the plan in action and picked up defendant and drove through Georgetown. She drove past the car wash and saw Pearce's car waiting. Pearce pulled out and attempted to follow

---

[1] Pursuant to 28 U.S.C. § 2254(e)(1), ". . . a determination of a factual issue made by a State court shall be presumed to be correct." Petitioner bears the burden of rebutting this presumption by clear and convincing evidence. See id. These facts are, therefore, drawn from the state court's opinion(s), lodged in this court. Petitioner may also be referred to as "defendant."

[2] These facts are taken from the California Court of Appeal's decision on direct appeal. Because petitioner only challenged the sufficiency of the evidence as to a conviction for false imprisonment, the court did not summarize those facts specifically relating to petitioner's conviction of forced oral copulation.

them but defendant saw the car and told Doe to speed up. Between Coloma and Placerville, Pearce lost sight of Doe's car. Pearce, with her husband, went to a diner and waited there several hours.

Defendant directed Doe to drive from Placerville to Cameron Park. From there they drove to Auburn. After trying to check into motels that were too expensive, they went to the Elmwood Motel. Once there, Doe's phone rang several times as Pearce was trying to reach her. Doe answered once, but did not speak long. Defendant got angry about the calls and his posture changed. Doe was scared and felt trapped; defendant was tense. Doe told defendant she needed to leave; she had to get home to her child. Defendant responded she was not going anywhere. Defendant told Doe that he thought the police were looking for him because of Toby Kaiser. He said Sheri had probably turned him in because he killed Kaiser, cut off his hands, and used them in burglaries. . . .

At footnote 4, the court added:

The police did not investigate this allegation further because it was outside their jurisdiction. There is no mention of this crime in the probation report.

The court continued:

. . . When Doe learned this, her attitude about leaving changed; she was scared.

Defendant wanted to get a local newspaper to see why the police were looking for him, so they went to Doe's gas station to get one. Defendant took the car keys with him when he went into the gas station. While he was gone, Doe called a friend, A. Meza. It was a poor connection and Meza hung up. Doe and defendant returned to the motel.

Doe again told defendant she needed to go home to her child. Defendant was still angry. He grabbed Doe and in certain terms told her of his sexual intentions. Doe declined. Defendant asked what if he went away forever and she could not do this. Doe thought he was referring to his killing Kaiser. Defendant proceeded to sexually assault Doe, despite her contrary plea.

Defendant heard the door move and jumped up, saying it was time to leave. As Doe got dressed, she heard defendant masturbating in the bathroom.

They left the motel and went to a gas station. While defendant was at a pay phone, Doe called Meza again and told him to call the police. Defendant got back in the car and announced they were going to Auburn to get some alcohol. When they stopped at a store, defendant left the keys in the car. Doe drove off and called 911.

/ / /

/ / /

/ / /

**B.     Procedural History**

Petitioner was convicted of forcible oral copulation and false imprisonment. The trial court found true allegations that petitioner had a prior serious felony conviction and had served two prior prison terms. Petitioner was sentenced to 24 years in prison. The conviction and sentence were affirmed on direct appeal and the California Supreme Court denied direct review. Petitioner then filed three state court post-conviction actions, all of which were denied.

## II. STANDARDS OF REVIEW

Because this action was filed after April 26, 1996, the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") are presumptively applicable. See Lindh v. Murphy, 521 U.S. 320, 336 (1997); Calderon v. United States Dist. Ct. (Beeler), 128 F.3d 1283, 1287 (9th Cir. 1997), cert. denied, 522 U.S. 1099 (1998). The AEDPA does not, however, apply in all circumstances. When it is clear that a state court has not reached the merits of a petitioner's claim, because it was not raised in state court or because the court denied it on procedural grounds, the AEDPA deference scheme does not apply and a federal habeas court must review the claim de novo. See Pirtle v. Morgan, 313 F.3d 1160 (9th Cir. 2002) (holding that the AEDPA did not apply where Washington Supreme Court refused to reach petitioner's claim under its "re-litigation rule"); see also Killian v. Poole, 282 F.3d 1204, 1208 (9th Cir. 2002) (holding that, where state court denied petitioner an evidentiary hearing on perjury claim, AEDPA did not apply because evidence of the perjury was adduced only at the evidentiary hearing in federal court); Appel v. Horn, 250 F.3d 203, 210 (3d Cir.2001) (reviewing petition de novo where state court had issued a ruling on the merits of a related claim, but not the claim alleged by petitioner). When the state court does not reach the merits of a claim, "concerns about comity and federalism . . . do not exist." Pirtle, 313 F. 3d at 1167.

///

///

4

Where AEDPA is applicable, federal habeas relief under 28 U.S.C. § 2254(d) is not available for any claim decided on the merits in state court proceedings unless the state court's adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Under § 2254(d)(1), federal habeas relief is available only where the state court's decision is "contrary to" or represents an "unreasonable application of" clearly established law. Under both standards, "clearly established law" means those holdings of the United States Supreme Court as of the time of the relevant state court decision. See Carey v. Musladin, 549 U.S. 70, 74 (2006) (citing Williams, 529 U.S. at 412) . "What matters are the holdings of the Supreme Court, not the holdings of lower federal courts." Plumlee v. Masto, 512 F.3d 1204 (9th Cir. 2008) (en banc). Supreme Court precedent is not clearly established law, and therefore federal habeas relief is unavailable, unless it "squarely addresses" an issue. See Moses v. Payne, 555 F.3d 742, 753-54 (9th Cir. 2009) (citing Wright v. Van Patten, 552 U.S. 120, 28 S. Ct. 743, 746 (2008)). For federal law to be clearly established, the Supreme Court must provide a "categorical answer" to the question before the state court. See id.; see also Carey, 549 U.S. at 76-77 (holding that a state court's decision that a defendant was not prejudiced by spectators' conduct at trial was not contrary to, or an unreasonable application of, the Supreme Court's test for determining prejudice created by state conduct at trial because the Court had never applied the test to spectators' conduct). Circuit court precedent may not be used to fill open questions in the Supreme Court's holdings. See Carey, 549 U.S. at 74.

///

///

///

In Williams v. Taylor, 529 U.S. 362 (2000) (O'Connor, J., concurring, garnering a majority of the Court), the United States Supreme Court explained these different standards. A state court decision is "contrary to" Supreme Court precedent if it is opposite to that reached by the Supreme Court on the same question of law, or if the state court decides the case differently than the Supreme Court has on a set of materially indistinguishable facts. See id. at 405. A state court decision is also "contrary to" established law if it applies a rule which contradicts the governing law set forth in Supreme Court cases. See id. In sum, the petitioner must demonstrate that Supreme Court precedent requires a contrary outcome because the state court applied the wrong legal rules. Thus, a state court decision applying the correct legal rule from Supreme Court cases to the facts of a particular case is not reviewed under the "contrary to" standard. See id. at 406. If a state court decision is "contrary to" clearly established law, it is reviewed to determine first whether it resulted in constitutional error. See Benn v. Lambert, 283 F.3d 1040, 1052 n.6 (9th Cir. 2002). If so, the next question is whether such error was structural, in which case federal habeas relief is warranted. See id. If the error was not structural, the final question is whether the error had a substantial and injurious effect on the verdict, or was harmless. See id.

State court decisions are reviewed under the far more deferential "unreasonable application of" standard where it identifies the correct legal rule from Supreme Court cases, but unreasonably applies the rule to the facts of a particular case. See Wiggins v. Smith, 539 U.S. 510, 520 (2003). While declining to rule on the issue, the Supreme Court in Williams, suggested that federal habeas relief may be available under this standard where the state court either unreasonably extends a legal principle to a new context where it should not apply, or unreasonably refuses to extend that principle to a new context where it should apply. See Williams, 529 U.S. at 408-09. The Supreme Court has, however, made it clear that a state court decision is not an "unreasonable application of" controlling law simply because it is an erroneous or incorrect application of federal law. See id. at 410; see also Lockyer v. Andrade, 538 U.S. 63, 75-76 (2003). An "unreasonable application of" controlling law cannot necessarily be found

even where the federal habeas court concludes that the state court decision is clearly erroneous. See Lockyer, 538 U.S. at 75-76. This is because "[t]he gloss of clear error fails to give proper deference to state courts by conflating error (even clear error) with unreasonableness." Id. at 75. As with state court decisions which are "contrary to" established federal law, where a state court decision is an "unreasonable application of" controlling law, federal habeas relief is nonetheless unavailable if the error was non-structural and harmless. See Benn, 283 F.3d at 1052 n.6.

The "unreasonable application of" standard also applies where the state court denies a claim without providing any reasoning whatsoever. See Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003); Delgado v. Lewis, 233 F.3d 976, 982 (9th Cir. 2000). Such decisions are considered adjudications on the merits and are, therefore, entitled to deference under the AEDPA. See Green v. Lambert, 288 F.3d 1081 1089 (9th Cir. 2002); Delgado, 233 F.3d at 982. The federal habeas court assumes that state court applied the correct law and analyzes whether the state court's summary denial was based on an objectively unreasonable application of that law. See Himes, 336 F.3d at 853; Delgado, 233 F.3d at 982.

### III. DISCUSSION

Petitioner raises three claims in his petition. First, he argues that his due process rights were violated when he was made to appear in court, in view of the jury, wearing bright orange jail-issue canvas shoes. Second, he argues that his trial counsel was ineffective for: (1) failing to object to petitioner appearing in court in the jail-issue shoes; (2) making false representations which were in direct conflict with petitioner's interests; (3) failing to pursue a motion to compel the prosecution to disclose "statutorily mandated and critical evidence, even after two court orders to do so"[3]; and (4) failing to conduct an adequate investigation. Third,

---

[3] As part of this claim, petitioner asserts: "This evidence has risen to the potential of a Brady violation of the purest kind." He does not, however, raise a violation of Brady v. Maryland, as a separate and distinct claim.

petitioner argues that the evidence was insufficient to show false imprisonment by violence or menace.  Respondent argues that none of the claims has merit.[4]

### A.     Due Process (Claim 1)

Petitioner claims that his due process rights were violated when he was forced to wear orange jail-issue canvass shoes during his trial.  The court agrees with respondent that, absent evidence that they jury saw the shoes, petitioner cannot state a claim for habeas relief.  See e.g. Deck v. Missouri, 544 U.S. 622, 624 (2005) (holding that the use of visible shackles during trial offends the constitution).  Because petitioner does not allege or present any evidence that the jury saw his shoes, the claim should be denied on the merits notwithstanding any lack of exhaustion.[5]

### B.     Ineffective Assistance of Counsel (Claim 2)

The Sixth Amendment guarantees the effective assistance of counsel.  The United States Supreme Court set forth the test for demonstrating ineffective assistance of counsel in Strickland v. Washington, 466 U.S. 668 (1984).  First, a petitioner must show that, considering all the circumstances, counsel's performance fell below an objective standard of reasonableness.  See id. at 688.  To this end, petitioner must identify the acts or omissions that are alleged not to have been the result of reasonable professional judgment.  See id. at 690.  The federal court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professional competent assistance.  See id.  In making this determination, however, there is a strong presumption "that counsel's conduct was within the wide range of reasonable assistance, and that he exercised acceptable professional judgment in all significant decisions made." Hughes v. Borg, 898 F.2d 695, 702 (9th Cir. 1990) (citing Strickland, 466 U.S. at 689).

---

[4] Respondent argues that neither of the first two claims are exhausted.  The court may, however, deny unexhausted claims on the merits.  See 28 U.S.C. § 2254(b)(2).

[5] Petitioner does not respond to this argument in his traverse.

1          Second, a petitioner must affirmatively prove prejudice.  See Strickland, 466 U.S.
2  at 693.  Prejudice is found where "there is a reasonable probability that, but for counsel's
3  unprofessional errors, the result of the proceeding would have been different."  Id. at 694.  A
4  reasonable probability is "a probability sufficient to undermine confidence in the outcome."  Id.;
5  see also Laboa v. Calderon, 224 F.3d 972, 981 (9th Cir. 2000).  A reviewing court "need not
6  determine whether counsel's performance was deficient before examining the prejudice suffered
7  by the defendant as a result of the alleged deficiencies . . . If it is easier to dispose of an
8  ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be
9  followed."  Pizzuto v. Arave, 280 F.3d 949, 955 (9th Cir. 2002) (quoting Strickland, 466 U.S. at
10 697).

11         Petitioner argues that his trial counsel was ineffective for: (1) failing to object to
12 petitioner appearing in court in the jail-issue shoes; (2) making false representations which were
13 in direct conflict with petitioner's interests; (3) failing to pursue a motion to compel the
14 prosecution to disclose "statutorily mandated and critical evidence, even after two court orders to
15 do so"; and (4) failing to conduct an adequate investigation.  Respondent argues that these claims
16 are too vague and conclusory as to warrant relief.  The court agrees.

17         As to petitioner's claim that counsel failed to raise an objections regarding the
18 orange shoes, petitioner has not, as discussed above, alleged that the jury saw the shoes.  Unless
19 the jury saw the shoes, there would have been no reason for counsel to object and the outcome of
20 the trial could not have been any different.  This claim, as with the underlying due process claim,
21 is simply conclusory absent specific factual allegations as to what the jury saw.

22         As to petitioner's claim that counsel made false representations, this claim is also
23 too vague and conclusory.  In total, petitioner's claim is: "In addition, counsel made false
24 presentations to a tough judge which went directly in conflict with his client's interests."
25 Petitioner does not allege which statements counsel made, which were false or how any such
26 statements undermined his interests.

1    Turning to petitioner's next argument, he asserts that counsel was ineffective
2 because he "failed to pursue former counsel's motion to compel the prosecution to turn over
3 statutorily mandated and critical evidence, even after two separate court orders to do so."  Again,
4 this claim is vague and conclusory because petitioner does not identify the information while
5 counsel failed to pursue and he does not indicate how any such evidence would have made a
6 difference in the outcome of the case.
7    Finally, petitioner argues that counsel was ineffective for failing to conduct an
8 adequate pre-trial investigation.  As with his other claims of ineffective assistance of counsel, the
9 court agrees with respondent that petitioner's claim regarding pre-trial investigation is vague and
10 conclusory.  As respondent notes: "Petitioner fails again to show what his counsel failed to do,
11 that such failure was deficient performance, and that the failure resulted in prejudice."  Absent
12 specific factual allegations on these points, petitioner is not entitled to habeas relief.

### C.    Sufficiency of the Evidence (Claim 3)

14    When a challenge is brought alleging insufficient evidence, federal habeas corpus
15 relief is available if it is found that, upon the record of evidence adduced at trial, viewed in the
16 light most favorable to the prosecution, no rational trier of fact could have found proof of guilt
17 beyond a reasonable doubt.  See Jackson v. Virginia, 443 U.S. 307, 319 (1979).[6]  Under Jackson,
18 the court must review the entire record when the sufficiency of the evidence is challenged on
19 habeas.  See id.  It is the province of the jury to "resolve conflicts in the testimony, to weigh the
20 evidence, and to draw reasonable inferences from basic facts to ultimate facts."  Id.  "The question
21 is not whether we are personally convinced beyond a reasonable doubt.  It is whether rational

---

[6] Even though Jackson was decided before AEDPA's effective date, this expression of the law is valid under AEDPA's standard of federal habeas corpus review.  A state court decision denying relief in the face of a record establishing that no rational jury could have found proof of guilt beyond a reasonable doubt would be either contrary to or an unreasonable application of the law as outlined in Jackson.  Cf. Bruce v. Terhune, 376 F.3d 950, 959 (9th Cir. 2004) (denying habeas relief on sufficiency of the evidence claim under AEDPA standard of review because a rational jury could make the finding at issue).

jurors could reach the conclusion that these jurors reached." Roehler v. Borg, 945 F.2d 303, 306 (9th Cir. 1991); see also Herrera v. Collins, 506 U.S. 390, 401-02 (1993).  The federal habeas court determines sufficiency of the evidence in the context of the substantive elements of the criminal offense, as defined by state law.  See Jackson, 443 U.S. at 324 n.16.

As to petitioner's claim that the evidence was insufficient to support his conviction for false imprisonment, the state court addressed the claim on direct appeal as follows:

> Defendant contends there is insufficient evidence of menace to support a conviction of felony false imprisonment.  He contends there is no evidence of an express or implied threat of harm and no evidence that defendant's statements about the Kaiser homicide were intended to restrain Doe.

The court then outlined California law relating to claims of insufficient evidence and continued as follows:

> False imprisonment is the unlawful violation of the personal liberty of another. (citation omitted).  It is punishable as a felony is "effected by violence, menace, fraud or deceit." (citation omitted).  Menace is defined as the threat of harm express or implied by word or deed. (citation omitted).
> In arguing there is insufficient evidence of menace, defendant relies on *People v. Matian* (1995) 35 Cal.App.4th 480.  In *Matian*, defendant sexually assaulted his victim; during the assault he squeezed her breast hard enough to cause pain, and possibly bruising.  Afterwards she collected her bookbag and prepared to go.  Defendant grabbed her arm, yelled at her not to go and that "'nothing happened.'"  He told her to go wash her face.  The victim then retreated to a chair.  Each time she got up to leave, defendant glared at her and began to rise.  She was afraid and did not want him to touch her so she sat down. (citation omitted).
> The appellate court found insufficient evidence of menace. (citation omitted).  It noted that cases finding menace fell into two categories: those where the defendant used a deadly weapon and those where defendant verbally threatened harm. (citation omitted).  The court found the earlier sexual assaults, coupled with defendant glaring and rising when the victim tried to leave, did not establish menace.  There was no evidence of a deadly weapon, a verbal threat, or any movement by defendant suggesting harm. (citation omitted).
> *Matian* has been criticized by several courts, both for suggesting menace requires either a weapon or a direct threat and for finding insufficient evidence of menace on its face. (citations omitted).  We agree with these criticisms; the context may make words or gestures an implied threat.  "When a rational fact finder could conclude that a defendant's acts or words expressly or impliedly threatened harm, the fact finder may find that there is a menace sufficient to make false imprisonment a felony.  An

11

express threat or use of a deadly weapon is not necessary." (citation omitted).

In this case the jury could find an implied threat of harm. When Doe foolishly picked up defendant, she knew he was wanted by the police. The presence of a SWAT team indicated he was dangerous. Whatever illusion of safety she had evaporated when he made her speed up to lose Pearce who was following them. Once at the motel, however, the situation got worse. Doe's constantly ringing phone upset defendant; he got tense and his "posture changed." When Doe said she needed to go home, defendant told her she was not going anywhere. Then he told her about Toby Kaiser, claiming he had killed and mutilated him.

Defendant contends he was simply trying to make sense of the numerous phone calls and why the police were looking for him. That is one explanation; another is that defendant, perhaps now suspicious of Doe, was reinforcing his command that she not leave by letting her know that he was capable of extreme violence. Defendant's words and his changed demeanor had the effect of restraining Doe. She was frightened; she testified she feared defendant, did not want "to mess with him," and changed her attitude about leaving. Her hearing that he would hurt her if she tried to leave is supported by the above-described circumstances. This evidence is sufficient to establish menace for felony false imprisonment.

Because the state court applied the correct federal constitutional principles, the court reviews to determine whether the state court's denial of petitioner's sufficiency-of-the-evidence claim was an unreasonable application of clearly established law. The court finds that it was not. Under California law, felony false imprisonment requires violence, menace, fraud, or deceit. Menace can be found where there is an implied threat and does not require a direct threat. As the state court observed, the facts of the case when viewed most favorably to the prosecution certainly allowed the jury to find an implied threat of violence. In particular, a reasonable jury could conclude based on petitioner's statement to Doe that he murdered Kaiser that petitioner was impliedly threatening Doe with similar violence if she did stay in the motel room with him. While petitioner's alternative theory that he was trying to make sense of the entire situation may also be plausible based on the evidence presented, it is for the jury to make this determination. As long as the evidence would allow a reasonable jury to reach the conclusion that an implied threat existed, petitioner's claim fails. The court finds that the evidence was sufficient in this case to allow the jury to reach this conclusion.

///

## IV.  CONCLUSION

The court concludes that, notwithstanding possible exhaustion problems, petitioner's claims have no merit.  In his motion for leave to file an amended petition, petitioner states that he should be allowed to amend because he has now exhausted any unexhausted claims.  Because the claims lack merit regardless of exhaustion, amendment would be futile.

Based on the foregoing, the undersigned recommends that:

1. Petitioner's petition for a writ of habeas corpus (Doc. 5) be denied; and
2. All pending motions (Docs 7 and 26) be denied as moot.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within 14 days after being served with these findings and recommendations, any party may file written objections with the court.  Responses to objections shall be filed within 14 days after service of objections.  Failure to file objections within the specified time may waive the right to appeal.  See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED:  February 6, 2012

_____
**CRAIG M. KELLISON**
UNITED STATES MAGISTRATE JUDGE