1

2

3

4

5

6

7

8                    **IN THE UNITED STATES DISTRICT COURT**

9                **FOR THE EASTERN DISTRICT OF CALIFORNIA**

10

11    KEVIN ROSS BEAM,                          No. 2:11-CV-0605-KJM-CMK-P

12                    Petitioner,

13            vs.                                <u>FINDINGS AND RECOMMENDATIONS</u>

14    V.W. KNIPP,

15                    Respondent.

16    _____/

17            Petitioner, a state prisoner proceeding pro se, seeks to bring a petition for a writ of

18    habeas corpus pursuant to 28 U.S.C. § 2254.  Pending before the court are petitioner's amended

19    petition for a writ of habeas corpus (Doc. 27), respondent's answer (Doc. 40), and petitioner's

20    reply (Doc. 44).

21    / / /

22    / / /

23    / / /

24    / / /

25    / / /

26    / / /

                                                  1

# I. BACKGROUND

**A.**   **Facts**[1]

The state court recited the following facts[2], and petitioner has not offered any

clear and convincing evidence to rebut the presumption that these facts are correct:

> The victim was referred to as Jane Doe at trial. Doe worked at a
> gas station in Cool. She heard the police were at her mother's house and
> twice left work to see what was going on. Doe's mother said the police
> were looking for defendant. At the house there were two police officers
> present and then a SWAT team arrived.
> Back at the gas station, a coworker told Doe that defendant was
> looking for her. Defendant phoned Doe, telling her he needed to get out of
> town because the police were looking for him. Doe did not agree at first to
> help defendant; he phoned her again.
> Doe spoke with her supervisor, F. Pearce, about defendant's phone
> calls. Pearce suggested Doe call the police. Pearce called the police; Doe
> and Pearce met the police at a market near the gas station. Doe told the
> officers of the residence where defendant could be located. . . . .

At footnote 3, the state court observed:

> The police claimed Doe would not tell them were defendant was.
> Defendant was wanted for burglary or possession of stolen property.

The state court continued its discussion as follows:

> . . . They told her they could not arrest someone at another's residence
> without a warrant.
> Doe and Pearce came up with a plan to get defendant arrested; Doe
> would pick him up and leave him at a motel. Pearce would follow Doe to
> ensure her safety. Pearce gave Doe $60 for the motel room. The police
> told Doe this plan was a terrible idea and not to do it. It would not be safe.
> Despite this warning, Doe put the plan in action and picked up
> defendant and drove through Georgetown. She drove past the car wash
> and saw Pearce's car waiting. Pearce pulled out and attempted to follow

---

[1]   Pursuant to 28 U.S.C. § 2254(e)(1), ". . . a determination of a factual issue made
by a State court shall be presumed to be correct." Petitioner bears the burden of rebutting this
presumption by clear and convincing evidence. See id. These facts are, therefore, drawn from
the state court's opinion(s), lodged in this court. Petitioner may also be referred to as
"defendant."

[2]   These facts are taken from the California Court of Appeal's decision on direct
appeal. Because petitioner only challenged the sufficiency of the evidence as to a conviction for
false imprisonment, the court did not summarize those facts specifically relating to petitioner's
conviction of forced oral copulation.

1    them but defendant saw the car and told Doe to speed up.  Between
     Coloma and Placerville, Pearce lost sight of Doe's car.  Pearce, with her
2    husband, went to a diner and waited there several hours.
             Defendant directed Doe to drive from Placerville to Cameron Park.
3    From there they drove to Auburn.  After trying to check into motels that
     were too expensive, they went to the Elmwood Motel.  Once there, Doe's
4    phone rang several times as Pearce was trying to reach her.  Doe answered
     once, but did not talk long.  Defendant got angry about the calls and his
5    posture changed.  Doe was scared and felt trapped; defendant was tense.
     Doe told defendant she needed to leave; she had to get home to her child.
6    Defendant responded she was not going anywhere.  Defendant told Doe
     that he thought the police were looking for him because of Toby Kaiser.
7    He said Sheri had probably turned him in because he killed Kaiser, cut off
     his hands, and used them in burglaries. . . .

8

9    At footnote 4, the court added:

10           The police did not investigate this allegation further because it was
     outside their jurisdiction.  There is no mention of this crime in the
11   probation report.

12   The court continued:

13           . . . When Doe learned this, her attitude about leaving changed; she was
     scared.
14           Defendant wanted to get a local newspaper to see why the police
     were looking for him, so they went to Doe's gas station to get one.
15   Defendant took the car keys with him when he went into the gas station.
     While he was gone, Doe called a friend, A. Meza.  It was a poor
16   connection and Meza hung up.  Doe and defendant returned to the motel.
             Doe again told defendant she needed to go home to her child.
17   Defendant was still angry.  He grabbed Doe and in certain terms told her
     of his sexual intentions.  Doe declined.  Defendant asked what if he went
18   away forever and she could not do this.  Doe thought he was referring to
     his killing Kaiser.  Defendant proceeded to sexually assault Doe, despite
19   her contrary plea.
             Defendant heard the door move and jumped up, saying it was time
20   to leave.  As Doe got dressed, she heard defendant masturbating in the
     bathroom.
21           They left the motel and went to a gas station.  While defendant was
     at a pay phone, Doe called Meza again and told him to call the police.
22   Defendant got back in the car and announced they were going to Auburn
     to get some alcohol.  When they stopped at a store, defendant left the keys
23   in the car.  Doe drove off and called 911.

24   / / /

25   / / /

26   / / /

3

1    **B.    Procedural History**

2    Petitioner was convicted of forcible oral copulation and false imprisonment.  The

3    trial court found true allegations that petitioner had a prior serious felony conviction and had

4    served two prior prison terms.  Petitioner was sentenced to 24 years in prison.  The conviction

5    and sentence were affirmed on direct appeal and the California Supreme Court denied direct

6    review.  Petitioner then filed three state court post-conviction actions, all of which were denied.

7

8    **II.  STANDARDS OF REVIEW**

9    Because this action was filed after April 26, 1996, the provisions of the

10   Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") are presumptively

11   applicable.  See Lindh v. Murphy, 521 U.S. 320, 336 (1997); Calderon v. United States Dist. Ct.

12   (Beeler), 128 F.3d 1283, 1287 (9th Cir. 1997), cert. denied, 522 U.S. 1099 (1998).  The AEDPA

13   does not, however, apply in all circumstances.  When it is clear that a state court has not reached

14   the merits of a petitioner's claim, because it was not raised in state court or because the court

15   denied it on procedural grounds, the AEDPA deference scheme does not apply and a federal

16   habeas court must review the claim de novo.  See Pirtle v. Morgan, 313 F.3d 1160 (9th Cir.

17   2002) (holding that the AEDPA did not apply where Washington Supreme Court refused to reach

18   petitioner's claim under its "re-litigation rule"); see also Killian v. Poole, 282 F.3d 1204, 1208

19   (9th Cir. 2002) (holding that, where state court denied petitioner an evidentiary hearing on

20   perjury claim, AEDPA did not apply because evidence of the perjury was adduced only at the

21   evidentiary hearing in federal court); Appel v. Horn, 250 F.3d 203, 210 (3d Cir.2001) (reviewing

22   petition de novo where state court had issued a ruling on the merits of a related claim, but not the

23   claim alleged by petitioner).  When the state court does not reach the merits of a claim,

24   "concerns about comity and federalism . . . do not exist."  Pirtle, 313 F. 3d at 1167.

25   / / /

26   / / /

4

1   Where AEDPA is applicable, federal habeas relief under 28 U.S.C. § 2254(d) is

2   not available for any claim decided on the merits in state court proceedings unless the state

3   court's adjudication of the claim:

4   (1) resulted in a decision that was contrary to, or involved an
    unreasonable application of, clearly established Federal law, as determined
5   by the Supreme Court of the United States; or

6   (2) resulted in a decision that was based on an unreasonable
    determination of the facts in light of the evidence presented in the State
7   court proceeding.

8   Under § 2254(d)(1), federal habeas relief is available only where the state court's decision is

9   "contrary to" or represents an "unreasonable application of" clearly established law. Under both

10  standards, "clearly established law" means those holdings of the United States Supreme Court as

11  of the time of the relevant state court decision. See Carey v. Musladin, 549 U.S. 70, 74 (2006)

12  (citing Williams, 529 U.S. at 412) . "What matters are the holdings of the Supreme Court, not

13  the holdings of lower federal courts." Plumlee v. Masto, 512 F.3d 1204 (9th Cir. 2008) (en

14  banc). Supreme Court precedent is not clearly established law, and therefore federal habeas

15  relief is unavailable, unless it "squarely addresses" an issue. See Moses v. Payne, 555 F.3d 742,

16  753-54 (9th Cir. 2009) (citing Wright v. Van Patten, 552 U.S. 120, 28 S. Ct. 743, 746 (2008)).

17  For federal law to be clearly established, the Supreme Court must provide a "categorical answer"

18  to the question before the state court. See id.; see also Carey, 549 U.S. at 76-77 (holding that a

19  state court's decision that a defendant was not prejudiced by spectators' conduct at trial was not

20  contrary to, or an unreasonable application of, the Supreme Court's test for determining prejudice

21  created by state conduct at trial because the Court had never applied the test to spectators'

22  conduct). Circuit court precedent may not be used to fill open questions in the Supreme Court's

23  holdings. See Carey, 549 U.S. at 74.

24  / / /

25  / / /

26  / / /

1    In Williams v. Taylor, 529 U.S. 362 (2000) (O'Connor, J., concurring, garnering a

2    majority of the Court), the United States Supreme Court explained these different standards.  A

3    state court decision is "contrary to" Supreme Court precedent if it is opposite to that reached by

4    the Supreme Court on the same question of law, or if the state court decides the case differently

5    than the Supreme Court has on a set of materially indistinguishable facts.  See id. at 405.  A state

6    court decision is also "contrary to" established law if it applies a rule which contradicts the

7    governing law set forth in Supreme Court cases.  See id.  In sum, the petitioner must demonstrate

8    that Supreme Court precedent requires a contrary outcome because the state court applied the

9    wrong legal rules.  Thus, a state court decision applying the correct legal rule from Supreme

10   Court cases to the facts of a particular case is not reviewed under the "contrary to" standard.  See

11   id. at 406.  If a state court decision is "contrary to" clearly established law, it is reviewed to

12   determine first whether it resulted in constitutional error.  See Benn v. Lambert, 283 F.3d 1040,

13   1052 n.6 (9th Cir. 2002).  If so, the next question is whether such error was structural, in which

14   case federal habeas relief is warranted.  See id.  If the error was not structural, the final question

15   is whether the error had a substantial and injurious effect on the verdict, or was harmless.  See id.

16   State court decisions are reviewed under the far more deferential "unreasonable

17   application of" standard where it identifies the correct legal rule from Supreme Court cases, but

18   unreasonably applies the rule to the facts of a particular case.  See Wiggins v. Smith, 539 U.S.

19   510, 520 (2003).  While declining to rule on the issue, the Supreme Court in Williams, suggested

20   that federal habeas relief may be available under this standard where the state court either

21   unreasonably extends a legal principle to a new context where it should not apply, or

22   unreasonably refuses to extend that principle to a new context where it should apply.  See

23   Williams, 529 U.S. at 408-09.  The Supreme Court has, however, made it clear that a state court

24   decision is not an "unreasonable application of" controlling law simply because it is an erroneous

25   or incorrect application of federal law.  See id. at 410; see also Lockyer v. Andrade, 538 U.S. 63,

26   75-76 (2003).  An "unreasonable application of" controlling law cannot necessarily be found

even where the federal habeas court concludes that the state court decision is clearly erroneous. See Lockyer, 538 U.S. at 75-76. This is because "[t]he gloss of clear error fails to give proper deference to state courts by conflating error (even clear error) with unreasonableness." Id. at 75. As with state court decisions which are "contrary to" established federal law, where a state court decision is an "unreasonable application of" controlling law, federal habeas relief is nonetheless unavailable if the error was non-structural and harmless. See Benn, 283 F.3d at 1052 n.6.

The "unreasonable application of" standard also applies where the state court denies a claim without providing any reasoning whatsoever. See Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003); Delgado v. Lewis, 233 F.3d 976, 982 (9th Cir. 2000). Such decisions are considered adjudications on the merits and are, therefore, entitled to deference under the AEDPA. See Green v. Lambert, 288 F.3d 1081 1089 (9th Cir. 2002); Delgado, 233 F.3d at 982. The federal habeas court assumes that state court applied the correct law and analyzes whether the state court's summary denial was based on an objectively unreasonable application of that law. See Himes, 336 F.3d at 853; Delgado, 233 F.3d at 982.

### III. DISCUSSION

Petitioner raises four claims in his amended petition. First, he argues that trial counsel was ineffective in the following ways: (1) failing to "inform the trial court of Petitioner's desire to testify"; (2) allowing him to appear in court, in view of the jury, wearing bright orange jail-issue canvas shoes; (3) failing to investigate prior false accusations made by the alleged victim; (4) failing to introduce a transcript of trial Exhibit 5; (5) failing to raise objections to testimony from law enforcement officers; and (6) failing to secure expert testimony. Second, petitioner contends that his due process rights were violated when he appeared in court, in the presence of the jury, in jail-issue shoes. Third, petitioner argues that appellate counsel was ineffective for failing to raise all issues on appeal. Fourth, petitioner argues that the evidence was insufficient to show false imprisonment by violence or menace.

### A.   Due Process Claim

Petitioner claims that his due process rights were violated when he was forced to wear orange jail-issue canvass shoes during his trial.  The court agrees with respondent that, absent evidence that they jury saw the shoes, petitioner cannot state a claim for habeas relief.  See e.g. Deck v. Missouri, 544 U.S. 622, 624 (2005) (holding that the use of visible shackles during trial offends the constitution).

### B.   Sufficiency of the Evidence Claim

When a challenge is brought alleging insufficient evidence, federal habeas corpus relief is available if it is found that, upon the record of evidence adduced at trial, viewed in the light most favorable to the prosecution, no rational trier of fact could have found proof of guilt beyond a reasonable doubt.  See Jackson v. Virginia, 443 U.S. 307, 319 (1979).[3]  Under Jackson, the court must review the entire record when the sufficiency of the evidence is challenged on habeas.  See id.  It is the province of the jury to "resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts."  Id.  "The question is not whether we are personally convinced beyond a reasonable doubt.  It is whether rational jurors could reach the conclusion that these jurors reached."  Roehler v. Borg, 945 F.2d 303, 306 (9th Cir. 1991);  see also Herrera v. Collins, 506 U.S. 390, 401-02 (1993).  The federal habeas court determines sufficiency of the evidence in the context of the substantive elements of the criminal offense, as defined by state law.  See Jackson, 443 U.S. at 324 n.16.

/ / /

/ / /

---

[3]   Even though Jackson was decided before AEDPA's effective date, this expression of the law is valid under AEDPA's standard of federal habeas corpus review.  A state court decision denying relief in the face of a record establishing that no rational jury could have found proof of guilt beyond a reasonable doubt would be either contrary to or an unreasonable application of the law as outlined in Jackson.  Cf. Bruce v. Terhune, 376 F.3d 950, 959 (9th Cir. 2004) (denying habeas relief on sufficiency of the evidence claim under AEDPA standard of review because a rational jury could make the finding at issue).

1    As to petitioner's claim that the evidence was insufficient to support his

2   conviction for false imprisonment, the state court addressed the claim on direct appeal as

3   follows:

4         Defendant contends there is insufficient evidence of menace to
          support a conviction of felony false imprisonment.  He contends there is
5         no evidence of an express or implied threat of harm and no evidence that
          defendant's statements about the Kaiser homicide were intended to
6         restrain Doe.

7   The court then outlined California law relating to claims of insufficient evidence and continued

8   as follows:

9         False imprisonment is the unlawful violation of the personal liberty
          of another.  (citation omitted).  It is punishable as a felony is "effected by
10        violence, menace, fraud or deceit."  (citation omitted).  Menace is defined
          as the threat of harm express or implied by word or deed.  (citation
11        omitted).
               In arguing there is insufficient evidence of menace, defendant
12        relies on *People v. Matian* (1995) 35 Cal.App.4th 480.  In *Matian*,
          defendant sexually assaulted his victim; during the assault he squeezed her
13        breast hard enough to cause pain, and possibly bruising.  Afterwards she
          collected her bookbag and prepared to go.  Defendant grabbed her arm,
14        yelled at her not to go and that "'nothing happened.'"  He told her to go
          wash her face.  The victim then retreated to a chair.  Each time she got up
15        to leave, defendant glared at her and began to rise.  She was afraid and did
          not want him to touch her so she sat down.  (citation omitted).
16             The appellate court found insufficient evidence of menace.
          (citation omitted).  It noted that cases finding menace fell into two
17        categories: those where the defendant used a deadly weapon and those
          where defendant verbally threatened harm.  (citation omitted).  The court
18        found the earlier sexual assaults, coupled with defendant glaring and rising
          when the victim tried to leave, did not establish menace.  There was no
19        evidence of a deadly weapon, a verbal threat, or any movement by
          defendant suggesting harm.  (citation omitted).
20             *Matian* has been criticized by several courts, both for suggesting
          menace requires either a weapon or a direct threat and for finding
21        insufficient evidence of menace on its face.  (citations omitted).  We agree
          with these criticisms; the context may make words or gestures an implied
22        threat.  "When a rational fact finder could conclude that a defendant's acts
          or words expressly or impliedly threatened harm, the fact finder may find
23        that there is a menace sufficient to make false imprisonment a felony.  An
          express threat or use of a deadly weapon is not necessary."  (citation
24        omitted).
               In this case the jury could find an implied threat of harm.  When
25        Doe foolishly picked up defendant, she knew he was wanted by the police.
          The presence of a SWAT team indicated he was dangerous.  Whatever
26        illusion of safety she had evaporated when he made her speed up to lose

9

1    Pearce who was following them.  Once at the motel, however, the situation
     got worse.  Doe's constantly ringing phone upset defendant; he got tense
2    and his "posture changed."  When Doe said she needed to go home,
     defendant told her she was not going anywhere.  Then he told her about
3    Toby Kaiser, claiming he had killed and mutilated him.
              Defendant contends he was simply trying to make sense of the
4    numerous phone calls and why the police were looking for him.  That is
     one explanation; another is that defendant, perhaps now suspicious of Doe,
5    was reinforcing his command that she not leave by letting her know that he
     was capable of extreme violence.  Defendant's words and his changed
6    demeanor had the effect of restraining Doe.  She was frightened; she
     testified she feared defendant, did not want "to mess with him," and
7    changed her attitude about leaving.  Her fear that he would hurt her if she
     tried to leave is supported by the above-described circumstances.  This
8    evidence is sufficient to establish menace for felony false imprisonment.

9         Because the state court applied the correct federal constitutional principles, the

10   court reviews to determine whether the state court's denial of petitioner's sufficiency-of-the-

11   evidence claim was an unreasonable application of clearly established law.  The court finds that it

12   was not.  Under California law, felony false imprisonment requires violence, menace, fraud, or

13   deceit.  Menace can be found where there is an implied threat and does not require a direct threat.

14   As the state court observed, the facts of the case when viewed most favorably to the prosecution

15   certainly allowed the jury to find an implied threat of violence.  In particular, a reasonable jury

16   could conclude based on petitioner's statement to Doe that he murdered Kaiser that petitioner

17   was impliedly threatening Doe with similar violence if she did stay in the motel room with him.

18   While petitioner's alternative theory that he was trying to make sense of the entire situation may

19   also be plausible based on the evidence presented, it is for the jury to make this determination.

20   As long as the evidence would allow a reasonable jury to reach the conclusion that an implied

21   threat existed, petitioner's claim fails.  The court finds that the evidence was sufficient in this

22   case to allow the jury to reach this conclusion.

23   ///

24   ///

25   ///

26   ///

### C.   <u>Ineffective Assistance of Counsel Claims</u>

The Sixth Amendment guarantees the effective assistance of counsel.  The United States Supreme Court set forth the test for demonstrating ineffective assistance of counsel in <u>Strickland v. Washington</u>, 466 U.S. 668 (1984).  First, a petitioner must show that, considering all the circumstances, counsel's performance fell below an objective standard of reasonableness.  <u>See</u> <u>id.</u> at 688.  To this end, petitioner must identify the acts or omissions that are alleged not to have been the result of reasonable professional judgment.  <u>See</u> <u>id.</u> at 690.  The federal court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professional competent assistance.  <u>See</u> <u>id.</u>  In making this determination, however, there is a strong presumption "that counsel's conduct was within the wide range of reasonable assistance, and that he exercised acceptable professional judgment in all significant decisions made."  <u>Hughes v. Borg</u>, 898 F.2d 695, 702 (9th Cir. 1990) (citing <u>Strickland</u>, 466 U.S. at 689).

Second, a petitioner must affirmatively prove prejudice.  <u>See</u> <u>Strickland</u>, 466 U.S. at 693.  Prejudice is found where "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  <u>Id.</u> at 694.  A reasonable probability is "a probability sufficient to undermine confidence in the outcome."  <u>Id.</u>; <u>see also</u> <u>Laboa v. Calderon</u>, 224 F.3d 972, 981 (9th Cir. 2000).  A reviewing court "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed."  <u>Pizzuto v. Arave</u>, 280 F.3d 949, 955 (9th Cir. 2002) (quoting <u>Strickland</u>, 466 U.S. at 697).

/ / /

/ / /

/ / /

The Strickland standards also apply to appellate counsel. See Smith v. Robbins, 528 U.S. 259, 285 (2000); Smith v. Murray, 477 U.S. 527, 535-36 (1986); Miller v. Keeney, 882 F.2d 1428, 1433 (9th Cir. 1989).  However, an indigent defendant "does not have a constitutional right to compel appointed counsel to press nonfrivolous points requested by the client, if counsel, as a matter of professional judgment, decides not to present those points." Jones v. Barnes, 463 U.S. 745, 751 (1983).  Counsel "must be allowed to decide what issues are to be pressed." Id. Otherwise, the ability of counsel to present the client's case in accord with counsel's professional evaluation would be "seriously undermined." Id.; see also Smith v. Stewart, 140 F.3d 1263, 1274 n.4 (9th Cir. 1998) (counsel not required to file "kitchen-sink briefs" because it "is not necessary, and is not even particularly good appellate advocacy.")  Further, there is, of course, no obligation to raise meritless arguments on a client's behalf.  See Strickland, 466 U.S. at 687-88.  Thus, counsel is not deficient for failing to raise a weak issue.  See Miller, 882 F.2d at 1434.  In order to demonstrate prejudice in this context, petitioner must demonstrate that, but for counsel's errors, he probably would have prevailed on appeal.  See id. at n.9.

1.    Trial Counsel

Petitioner argues that his trial counsel was ineffective for: (1) failing to "inform the trial court of Petitioner's desire to testify"; (2) allowing him to appear in court, in view of the jury, wearing bright orange jail-issue canvas shoes; (3) failing to investigate prior false accusations made by the alleged victim; (4) failing to introduce a transcript of trial Exhibit 5; (5) failing to raise objections to testimony from law enforcement officers; and (6) failing to secure expert testimony.  These claims, however, all fail because they are vague and conclusory.

As to petitioner's claim that counsel was ineffective for failing to inform the court of his desire to testify on his own behalf, the court finds that the claim is conclusory and vague in that petitioner does not state how he was prejudiced.  Petitioner merely states that he had the right to testify, that counsel failed to inform the court of that right (which, of course, the court knew full well), and that he did not testify.  Petitioner does not, however, inform the court what the

12

1   substance of his testimony would have been and how that testimony would have had an effect on

2   the outcome of the trial.

3          As to petitioner's claim that counsel failed to raise any objections regarding the

4   orange shoes, petitioner has not, as discussed above, alleged that the jury saw the shoes.  Unless

5   the jury saw the shoes, there would have been no reason for counsel to object and the outcome of

6   the trial could not have been any different.  This claim, as with the underlying due process claim,

7   is simply conclusory absent specific factual allegations as to what the jury saw.

8          Turning next to petitioner's claim that counsel failed to adequately investigate

9   allegedly false prior kidnaping accusations made by the victim, petitioner supports this claim

10   with a declaration from Amber Royal.  Nothing in this declaration, however, suggests that the

11   victim made any prior false kidnaping accusations.  Thus, as with petitioner's other ineffective

12   assistance of counsel claims, petitioner has failed to identify facts which would show that counsel

13   knew about prior false allegations made by the victim in this case.

14          Next, petitioner claims that counsel was ineffective for failing to introduce a

15   transcript of trial Exhibit 5, an audio recording of petitioner's interrogation.  The trial record

16   reflects that the recording was played to the jury, admitted into evidence, and replayed at the

17   jury's request.  Petitioner has not articulated how the jury's access to a transcript of the audio

18   recording would have made any difference to the outcome of the trial.

19          Next, petitioner argues that trial counsel was ineffective for failing to raise

20   objections to testimony from various law enforcement officers.  Specifically, according to

21   petitioner, counsel should have objected to the officers' testimony that they believed petitioner

22   was engaged in criminal activity because the officers should have known that he was on parole at

23   the time.  The court cannot see, however, how the officers' knowledge of his parole status, or

24   lack thereof, would have rendered the officers' testimony as to their belief of criminal activity

25   objectionable.  Petitioner simply has not articulated how trial counsel's performance was

26   deficient in this regard.

1    Finally, petitioner argues that his trial counsel was ineffective for failing to secure

2    expert evidence to prove that bruising on the victim's inner thighs were, in fact, "hickeys."

3    Again, petitioner does not articulate how such expert testimony would have made any difference

4    to the outcome of his trial.  Specifically, petitioner has not demonstrated how, had the jury

5    believed that the bruises were "hickeys," an acquittal would have been more likely.  To the extent

6    petitioner would argue that the presence of "hickeys" indicates that the victim consented to

7    sexual contact, such an argument would be without merit because "hickeys" could just have

8    readily resulted from non-consensual contact.  Thus, nothing about the presence of "hickeys"

9    goes to the issue of consent.

10    2.    Appellate Counsel

11    According to petitioner, appellate counsel compounded the ineffective assistance

12    of trial counsel by failing to raise any of the issues discussed above on appeal.  The court cannot,

13    however, find any basis for relief given that none of the arguments petitioner would have had

14    appellate counsel raise has any merit.

15    / / /

16    / / /

17    / / /

18    / / /

19    / / /

20    / / /

21    / / /

22    / / /

23    / / /

24    / / /

25    / / /

26    / / /

### IV.  CONCLUSION

Based on the foregoing, the undersigned recommends that petitioner's amended petition for a writ of habeas corpus (Doc. 27) be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within 14 days after being served with these findings and recommendations, any party may file written objections with the court.  Responses to objections shall be filed within 14 days after service of objections.  Failure to file objections within the specified time may waive the right to appeal. See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).


DATED:  March 6, 2014

                                        _____
                                        **CRAIG M. KELLISON**
                                        UNITED STATES MAGISTRATE JUDGE